## CITY OF SAN ANTONIO et al. v. WALTERS et al. (No. 6996.)

(Court of Civil Appeals of Texas. San Antonio. June 6, 1923. Rehearing Denied June 27, 1923.)

1. **Municipal corporations** ⟨⟩63(1) — **Good faith of municipal government not subject to judicial inquiry.**

Good faith or motives of a city government are not subject to judicial inquiry.

2. **Constitutional law** ⟨⟩93(1)—**Municipal corporations** ⟨⟩661(1)—**Under charter giving city control over its streets, municipality may prohibit use of sidewalks for private business; no vested right to use sidewalk for business.**

Under charter giving city's governing body the exclusive control of streets and sidewalks and to remove obstructions, a citizen has no vested right to conduct his private business thereon, and the city may prohibit such use.

3. **Municipal corporations** ⟨⟩111(4)—**Rule as to partial invalidity of ordinance stated.**

Where an invalid provision of an ordinance is separable from its valid provisions without

defeating the object of the legislative body, the valid provisions of the ordinance will be given effect; hence an ordinance is not rendered invalid by reference to an undescribed contract in a clause not necessary to its vitality.

Appeal from District Court, Bexar County; R. B. Minor, Judge.

Suit by W. G. Walters and others against the City of San Antonio and others. From judgment for plaintiffs, defendants appeal. Reversed and remanded, with instructions.

Russell & Woodhull, W. C. Douglas, Ray Marshall, and W. J. Park, all of San Antonio, for appellants.

Gaines & Gaines, of San Antonio, for appellees.

FLY, C. J. This is an application for injunction filed by W. G. Walters, Zay Smith, and J. M. Urbina against the city of San Antonio, O. B. Black, its mayor, and William O. Rieden, J. P. Pfeiffer, Ray Lambert, and Phil Wright, its commissioners, to restrain them from enforcing an ordinance of the city and "from interfering with plaintiffs in any way in their use and enjoyment of their property rights in and to said receptacles;" the latter being garbage cans, placed on the sidewalks of the city, upon which were advertisements of different kinds. It is alleged in the petition:

"That the enforcement of said ordinance and the penalty thereunder will deprive the plaintiffs of the use and enjoyment of their property in the form of these receptacles; that by compelling the removal of these receptacles from the sidewalks after 9 o'clock p. m. will prevent their leasing the same to any one and result in the cancellation of their advertising agreements, causing loss of the revenue derived therefrom now and prior to the passage of the above ordinance."

A temporary writ of injunction was granted by the Fifty-Seventh district court and from that interlocutory order this appeal has been perfected.

It is pleaded by appellees that they are the owners of certain garbage receptacles in the city of San Antonio; that 10 of them are now placed on the sidewalks in front of business houses; that they charge $1 a year as rental for the receptacles and place advertisements on them at a rental of $4 each per annum, making a total of $490 per annum for the 10 garbage cans. After setting out the expenses of preparing the receptacles, an ordinance of the city dated December 14, 1922, is copied into the petition. That ordinance is as follows:

"Be it ordained by the commissioners of the city of San Antonio:

"Section 1.—That section 6 of an ordinance passed and approved on the 24th day of January, 1918, be and the same is hereby amended

so that hereafter the said section 6 shall read as follows:

"Section 6.—It shall be unlawful for any person, firm, corporation, tenant or occupant of any premises or building within the city of San Antonio, or the agent, servant or employé of any such person, firm, corporation, tenant or occupant to place, allow or suffer to remain after the same has been emptied by the garbage collector any receptacle for garbage, waste or trash in, on or about any public street, plaza, park, sidewalk or other public place, except an alley in the rear of such premises; and in the downtown or business district of the city of San Antonio as defined in an ordinance passed and approved on November 9th, 1922, and entitled 'An ordinance regulating the speed of motor vehicles within the corporate limits of the city of San Antonio, and providing a penalty for the violation thereof.' It shall be unlawful for any person, firm, corporation, tenant or occupant of any premises after 9 o'clock a. m. to permit any such receptacle for garbage, waste or trash, whether the same be emptied or not, to remain in, on, or about any public street, plaza, park, sidewalk or other public place, except an alley in the rear of such building or premises: Provided, however, that nothing herein is intended to repeal or interfere with any rights of the city of San Antonio to place receptacles for garbage, waste or trash at suitable intervals in said downtown business district for the reception of such garbage, waste or trash for the accommodation of the general public; nor to repeal or interfere with any of the rights under any contract heretofore made by the city of San Antonio for the placing of garbage and trash cans in said district for the use of the public at large.

"Section 2.—That the said ordinance be and the same is hereby further amended by the addition of section 6-a, which section 6-a shall follow immediately after 6 thereof, as hereinbefore amended and which section 6-a shall read and provide as follows:

"Section 6-a.—Any garbage cans or receptacles for garbage, waste or trash which are permitted or suffered to be and remain in or upon any street, sidewalk or public place in violation of this ordinance are hereby declared to be public nuisances and the city of San Antonio shall have the right of summarily abating such nuisance by removing any garbage receptacles allowed to remain in any public place in violation of the provisions hereof."

The ordinance is attacked on the ground that by reason of the exemption of certain parties from its provisions it creates special privileges and is therefore void; that it was passed in the interest of a certain advertising company, which had been permitted to place garbage cans on the sidewalks and put advertising matter thereon, upon paying to the city the sum of $6 per annum for each receptacle for garbage, waste, and trash, and was not passed in the interest of the public and is therefore void. These allegations are followed by candid allegations that the ordinance prevented appellees from using the sidewalks as their place of business for advertising and other purposes. In the brief it is said:

253 S.W.—35

"The enforcement of the ordinance would deny the appellees the enjoyment of their rights existing prior to the passage thereof and deprives them of valuable property rights and prevents them conducting a business in which they have invested capital and from which they derive a profit."

[1] In considering the questions involved in this appeal, we remove from the discussion all inquiry into the good faith or motives of the commission government of the city of San Antonio. That is a matter not subject to judicial inquiry. Volume VII, Supp. McQuillin, Mun. Corp. § 733; Gray v. Woodring Lumber Co. (Tex. Civ. App.) 197 S. W. 231.

[2] Section 90 of the charter of the city of San Antonio gives the governing body of the city "the exclusive control and power over the streets, alleys, sidewalks and public grounds and highways of the city, and to abate and remove encroachments or obstructions thereon." This provision of the charter has been discussed and construed by this court time and again, and it has been reiterated so often that the citizen of a municipality has no vested right to conduct his business on the streets and sidewalks, that it would seem that it was unnecessary to consider the question again, and yet appellees are claiming the right to conduct a business on the sidewalks of the city of San Antonio, and on that contention have obtained a writ of injunction from a district court restraining the city from interfering with such private business. On December 6, 1922, this court held:

"The matter is settled for once and all, and nothing can be added to the reasons for sustaining ordinances giving cities the authority to regulate, control, or even prohibit certain traffic on their streets, and they need not be amplified, or repeated in this case."

In the cases of Greene v. San Antonio, 178 S. W. 6, Peters v. San Antonio, 195 S. W. 989, and San Antonio v. Fetzer, 241 S. W. 1034, the power of cities to absolutely control the use of their streets has been proclaimed, and the decisions therein have been approved by every court in America in which such right has been under discussion. If the use of the streets by vehicles for certain purposes can be absolutely prohibited, certainly the power to protect the sidewalks from obstruction and unsanitary use would exist. If the city can prevent jitney owners from using certain streets and can regulate the use by them of any of the streets, it follows that the power exists to protect those using sidewalks from the encroachments of those who transform them into places of business. We need not further discuss this matter for it is the consensus of opinion that the power exists in the municipal corporation to prohibit the use of its sidewalks for the purpose of conducting a private business.

[3] It would follow that the city of San

António had the right to pass the ordinance in question, and, independent of any contract made before the enactment of the ordinance, that portion of the ordinance as to the right to use the sidewalks for certain purposes would be clearly within the charter powers of the city. Appellees do not deny this right, but contend that the clause "nor to repeal or interfere with any of the rights under any contract heretofore made by the city of San Antonio for the placing of garbage and trash cans in said district for the use of the public at large," invalidates the whole ordinance. We do not think so, for it is the rule that, where an invalid provision of an ordinance is separable from and independent of its valid provisions and can be severed without defeating the object of the legislative body, the valid provisions of the ordinance will be sustained and given their appropriate effect. Dillon, Mun. Corp. § 647, and footnotes. It becomes unnecessary for this court to determine the validity or invalidity of that part of the ordinance referring to some unnamed, unidentified contract into which the city had entered with some one not mentioned.

In the case of Ennis Water Works v. City of Ennis, 105 Tex. 63, 144 S. W. 930, relied on by appellees, the city had entered into a contract all parts of which were inseparably connected, and the case would be authority if this court were construing some contract, made with the city of San Antonio, to which reference is made in the ordinance. We are not construing that contract but an ordinance of the city, which it is claimed is rendered void by a reference to some sort of contract in a clause not necessary to its vitality. That reference did not invalidate the ordinance and appellees are bound by its terms.

Appellees proceeded in the trial court and are proceeding in this court on the assumption that they have some vested right to open up and conduct a private business on the sidewalks of the city of San Antonio, but no such right exists. The sidewalks are under the absolute control of the city, and in the absence of permission from the city to operate a private business on the sidewalks they were naked trespassers, and even in the absence of an ordinance the city could protect the public from any such unwarranted usurpation. If its contention that the ordinance in question is void should be sustained, appellees have no right to enter upon and seek to appropriate to their own private ends the streets and sidewalks of the city. Appellees have no property rights in the sidewalks, and they fail to show any right whatever in a court of equity to be protected from an imaginary assault upon imaginary rights which have no legal existence.

There is no right or equity in the judgment, and it is reversed and the writ of injunction dissolved, and, it clearly appearing that no good end will be obtained by further consideration of the case by the lower court, the cause is remanded to that court with instructions to dismiss said cause from its docket at the cost of appellees herein.